Interest-based Subsidy Applications. We're going to go on to Appeal number 23-1698, Axis Insurance Company versus American Specialty Insurance and Risk, etc. And there you are, Mr. Paul. Hello. Good morning, Judge Rogner, and may it please the court. When the Tampa Bay Buccaneers threatened the coverage suit, Axis Insurance Company demanded that its agent, American Specialty, indemnify it for any losses stemming from its admitted mistakes in writing coverage and invited American Specialty to attend mediation. In response, American Specialty stuck its head in the sand and didn't respond for a year and a half. Now, American Specialty second-guesses Axis's decision to settle the Bucs threatened coverage suit. The dispositive question is this. Where the governing contract doesn't require it, was Axis nonetheless required to tender a defense to American Specialty on penalty of having to bear the heavy burden of proving actual liability on the coverage claim? And the answer is no, for three reasons. One, standard contract interpretation principles preclude adding provisions to a contract that the parties haven't agreed to. Secondly, under Indiana common law, a tender of defense is simply not a threshold requirement to obtain indemnification. And importantly, to impose such a threshold requirement here is to penalize Axis for exercising its contractual right not only to not tender a defense, but to assume the handling of any claim, including any coverage claim. Instead of having to prove only potential liability, it must bear the heavy burden of proving actual liability. That cannot be right. And finally, even if Indiana had a threshold tender requirement, and I stress it does not, it makes no sense and serves no policy interest to penalize Axis for not formally tendering a defense here because American Specialty simply was not harmed in any way by the lack of a formal tender of defense. American Specialty suffered no prejudice. Mr. Paul, could I ask you a couple of quick factual questions here? As I understand the contract, American Specialty was required to carry errors and omissions policy coverage for about $25 million. Mr. Tonner's letter asked in, I want to say May of 2015, asked American Specialty to confirm that it had that policy. Was there a response? There was. Well, let me answer it this way. They never confirmed that they had errors and omissions coverage. I do not see that in the record. Okay. I'll ask their counsel as well. The reason I ask is because I assume that Axis, when it indemnifies other parties, usually writes a provision into the contract to control the defense. Is that right? I don't know about other contracts. It's not on the mirror image in paragraph 27 of this provision, but most insurance companies want to control the defense and write that into their insurance policy. Yes, which is a critical point. You can bargain for the right to receive a tender of defense and to control the defense. In fact, if you look at the underlying general liability policy in this very case, you'll see that the parties there bargain for exactly that right. American Specialty could have bargained for that right, but it didn't bargain for that right. 27.6 requires Axis to give notice of a claim and demand indemnification, but it is noticeably silent on any duty to demand a defense. And that is entirely consistent with the structure of the contract, which gives Axis the broad right to assume the handling of any claim, including any coverage claim, and ultimate authority over any settlement. And you'll see that at pages 68 and 69 of the separate appendix. So notwithstanding what the district court's opinion suggests, Axis cannot be faulted for exercising its contractual rights. There's nothing in the contract that says Axis forfeits its contractual right to indemnification if it exercises its other contractual right to assume the handling of the claim, which is what it did here. So would, I mean, obviously, a fairly unusual feature of this case, and it obviously troubled the district judge, is the Axis hands-off order, is to stay out of the administration of this. Then, obviously, you tell us we've got Mr. Tonner's letter inviting them to come to the later. If they had accepted, if they had participated in that, do you think American Specialty would have had a right to veto a settlement? No. In fact, as I just mentioned, under the PMA, Axis reserved to itself ultimate authority over any settlement. Again, see 68 and 69 of the separate appendix. They certainly could have provided input. They could have argued that there should or shouldn't be a settlement, and if so, for how much. And we invited them to provide that input. In Mr. Tonner's letter of November 7th of 2016, he invited American Specialty to mediate and to help it reach a negotiated solution. At a minimum, those words imply the invitation to a give-and-take process, and even if you disregard that letter, the Buccaneers separately sent a letter to American Specialty, Axis, and Marsh, the Buccaneers' agent, inviting those parties to attend the mediation and to participate. That was the Buccaneers' word. So American Specialty had the opportunity to go to mediation and to participate in the mediation and provide its input, and for whatever reason, it chose not to do that. And so when we look at the program management agreement between Axis and American Specialty, where it says American Specialty agrees to defend, comma, indemnify, comma, several other verbs, the agrees to defend is best understood as an agreement to defend when and if asked to do so by Axis. And in this circumstance, it's your position that Axis not only never did ask, was never going to ask, had no interest in American Specialty participating in any defense. I think that's likely right, although you have to remember that the Buccaneers were threatening a coverage suit. They had not filed one, so we don't know what would have happened then. But you're exactly right, Judge Jackson-Akumi. American Specialty conflates the duty to defend that it has under the provision that you've just read with a right to receive a tender of defense. There is no such right. Axis chooses whether to demand a defense from American Specialty, and it can choose or not to choose to tender a defense for a reason or no reason. And here in exercising its broad claim handling rights, it chose not to tender a formal defense. But as I say, it wouldn't have made any difference. Could I ask you to clarify, you were citing pages 68 and 69 of the appendix. How does that document fit together with the PMA? All of the documents in the PMA, there are three documents, and they're all part of the PMA. The PMA references that document, and it's all part of the governing contract, if that makes sense. Yes, thank you. So moving away from the contract now to what Indiana law says, as I said, there's nothing in Indiana law that imposes a threshold tender of defense requirement or says the voluntariness inquiry turns on whether there's a tender. Now, the district court was concerned that Axis should tender a defense to provide what the court called a measure of due process to American Specialty to protect it against an unwarranted settlement. That's wrong, however. That does not depend on and should not depend on whether there is a tender of defense, particularly when the contract doesn't require it. Indiana common law already provides indemnitors protection against unwarranted settlements in at least three ways. One, indemnitors may contract for the right to receive a tender of defense to control that defense and to control settlement, and American Specialty didn't. That's where we began with Judge Hamilton's second. Under Indiana law, indemnification is unavailable for voluntary settlements. All agree on that. That is settlements where there is no potential for liability. All agree indemnification is unavailable for gifts. And finally, under Indiana law, any settlement must be fair and reasonable. Those are the protections that are already provided in Indiana law for parties in and the court did not need to write into Indiana law an additional or different protection that is consistent with what the contract says and inconsistent with existing common law. And very briefly, Mr. Paul, if we agree with you, would we need to remand for a determination about the fairness and reasonableness of the settlement offer or has that already been sufficiently aired in your view? Well, the district court declined to reach that issue. And so normally, the remedy would be to remand. However, we think that's unnecessary because it's undisputed that American Specialty ignored AXIS's demands for indemnification, ignored its request to attend mediation, and refused to accept responsibility for what itself had previously called a mistake. So if that is not tantamount to a denial of a duty to indemnify, I'm not sure what is. And those facts mean it should be a stop from contesting the fairness and reasonableness of the settlement. Okay. Thank you. Thank you. Hey. May it please the court. Good morning. Lawrence Ingram for American Specialty. I have with me Mr. Keeley from Stuart and Brannigan. To answer your question, Judge Hamilton, there's nothing in the record about whether the E&O policy was provided in response to that letter. But I can tell you that in the when these contracts are formed, it's required that the company such as American Specialty provide an E&O policy. And we do know that the E&O policy was provided in this litigation. I have to address something that counsel said. Section 27.6 was not raised below in the motion for summary judgment, was not raised. And when it was tried to be argued, the district court said you didn't raise that below. Just a minute. Yes. Accesses counsel did bring it up in oral argument below. And I'm wondering why you think we should ignore what the PMA says or does not say about notice and tendering the defense of the claim. I mean, aren't the parties respective duties regarding identification and instance defined by their own contract? Well, we understand, Your Honor, that that is a part of the contract. It's just I wanted to point out that the district court found that that argument had not been raised. And even though counsel tried to raise it, the district court in the transcript of the oral argument, you'll see that the district court said that wasn't raised. It doesn't change the outcome here. I will say that because the law of this case is controlled by the Florida, I'm sorry, the Indiana Decisional Law of sink, price, and to a lesser extent, sequa coatings. Well, Mr. Grimm, in terms of what Indiana law requires, it seems to me that there's a difference between a case noting as a factual matter that the indemnity tender defense of a claim to the indemnitor and citing that as one factor among others in support of a duty to indemnify and a case holding that tendering the defense of a claim is required, required as a condition of indemnification. Is there an Indiana case that expressly requires the indemnity to tender defense of a claim to the indemnitor? So, Your Honor, to answer the question, the indemnity provision 27.4 says defend, indemnify, and hold harmless. So, it's a conjunctive term. So, there's an obligation on the part of American Specialty to defend. I take it the answer to Judge Rovner's question is no. Right. Not such a case. Well, the cases, I apologize if I misunderstood your question, Your Honor, and I intend to answer your question. If the question is, is there a case in Indiana that says do you have to have a contract that says you must offer to, you must provide a tender of defense, we know that the Sink case, Sink held that in finding that the payment was involuntary that there had been a tender of the defense and yet that contract did not even mention defense. That's the question that Judge Rovner was raising. We find a description of the facts in these cases where defenses were tendered. What I don't see is a holding from an Indiana court saying that's required. Required, precisely. Now, the district judge took that description of the facts in those cases and turned it normative and said that's required. As I understand what the district court did, the district court said that in the cases of Sink, Price, and Sequa Holdings, there was some measure of due process provided and when they say, when the courts say notice, notice presumes that one, the indemnitor has not rejected the contract, two, that there's been a tender of defense or rejection, and three, that there is an opportunity to approve the terms of a settlement. And where do we find that in this contract or in those cases saying that's required? Well, we find that in Sink where the court is, in Sink the court is trying to determine, there were a number of different questions before the court, but the one question that the court was looking at was, was the payment, the settlement payment during litigation, was that voluntary? And the fact that the court says in that analysis that, well, here they denied the opportunity to defend and they refused to approve the settlement. Apparently in Sink there was an offer to settle for $150,000 and the indemnitor declined to approve that and they were also rejecting the contract. So when the Sink court finds that the payment was voluntary, those are the facts that found it was involuntary. Yeah, I'm sorry. And the fact, again, you've accurately described the facts of Sink. What I don't see is the court saying, and that's essential, that tender of the defense was essential. And we don't see that in the decision, but what we see in the decision is the court says, there's a question as to whether the payment was voluntary or involuntary. We find that it's involuntary because, and then they cite to the fact that they were given an opportunity to defend, they declined, or they rejected the contract. So the district court connected those dots. Okay. That's what we're all trying to do is predict Indiana law in this question. Let me ask you though, whether it would be reasonable to let American Specialty defend in this case if it did not show that it was able and willing to honor the demand, for example, by showing it had the insurance available to cover the time's demand. Well, AXIS is aware that American Specialty is owned by Brown & Brown, the fourth or fifth largest insurance broker in the world. They were well aware of the wherewithal of with whom they were contracting. So the E&O policy is a nice thing, but it's not required. Brown & Brown can cover the four or five million dollars of whatever it is. And I guess one of the things that troubles me here, Mr. Ingram, you emphasize we never denied indemnity, right? We did not reject the indemnity contract. Did you respond? That's my question. It looks to me from this evidence like your client decided to put its head under the covers. We screwed up. We've asked AXIS to fix it. They won't. And we're just going to hide under the covers until we hope this goes away. Without responding, confirming we have the insurance, confirming we in fact have this duty to indemnify, and then staying away from the mediation. Well, let's go through those one at a time. Okay, please. Put yourself in American Specialist's position. They're told by AXIS from the very first get-go, stay out of the issue regarding the buccaneers on the coverage of the policy and stay out of the defense of the buccaneers claim. Stay out of it. Don't do anything. We followed that instruction for 18 months. And you talk about the mediation. Look at that letter. It's in the record. I read it. Okay, what does the letter say? The letter says, first of all, we don't believe there's any coverage. They say, by the way, American Specialist, you have a contract. In the event some future court or jury decides there's coverage, we will then want a defense and indemnity. And then finally they say, and we're going to invite you and Marsh to a pre-mediation meeting. The mediation is on December 19th. We want you to come to this pre-mediation meeting for what's called a market solution. There is nothing in the contract that requires American Specialist. Of course, it's an invitation to participate and prepare for the mediation. And you guys didn't respond to it, did you? We did not respond to that to access. We did respond to a similar letter from Marsh. And what did you say in response to Marsh? Marsh was saying there should be coverage under the policy because of the proposal on the binder. And the broker said, well, the condition preceding was that the primary policy, the primary employer. Well, I understand the point about denying coverage to the Buccaneers, but that was going to be highly controversial if it had to be litigated. Well, let's think about that. American Specialist, I mean, sorry, Access had the opportunity. If it was concerned about coverage with the Bucs, it could have brought declaratory judgment action, as could American Specialist. It could have, and they would have had to produce your client's email saying we screwed up. Please reform the policy, right? Those emails would have come in. But let's remember now, those emails cannot be a breach of the contract because the contract had been terminated a year before. No, I'm not concerned about whether they were a breach of the contract. I'm just saying they're pretty compelling evidence in a case by the Buccaneers to reform the policy. Understood. But remember, there's the countervailing evidence, Your Honor, that Marsh was aware when the policy was delivered that it did not contain XSEL. I understand you all had defenses, okay? But those were all resolved in the settlement in which you stayed out, okay? And that's the problem here. I guess, well, I think I've asked just about everything I need to. Well, Your Honor, if my colleagues would allow me, do you contest Access's point that if you wanted to be assured an opportunity to be tendered a defense that you could have negotiated for that? The parties could have contracted for that in the requirement in Indiana law. In sync and in price, there's no contractual provision requiring a tender of a defense. And yet, those courts found when finding reasonable, I'm sorry, when finding whether it's voluntary, involuntary, that the fact that the defense had been tendered was an important fact. So those courts used that fact to find whether it's voluntary or not. Your answer is we didn't have to, is your answer we just didn't have to contract for that at the outset. We shouldn't have never. That's the wrong question, court. We should not have had to do that. Is that the answer? Yes. The answer would be that it's subsumed in 27.6. Okay. Or 27.4, where you've got an obligation by American specialty to defend. We should be given an opportunity to defend. And all the things that the court raised about defenses to what opportunity to do that. These contracts provide risk and benefits to both sides. The rule that Axis would have the court apply provides no risk to Axis. They can keep complete control. They can keep American specialty in the dark about the settlement details. And remember that the mediation was in December. The settlement wasn't completed until April. There was plenty of time for Axis to contact American specialty and say we can settle for X amount of dollars. If you don't agree with that, come in and defend us now. Why would they expect you to respond to that when you hadn't responded to the prior letters? We're still under the instruction to stay out. In other words, when Axis tells us to stay out, what are we supposed to do at this pre-mediation meeting other than show up and write a check? Instead, we would need an opportunity to defend the coverage action of the Buccaneers and the actions of American specialty. So the rule that Axis would have this court apply provides no risk to Axis and every risk to American specialty. Well, I could not agree less because American specialty was invited, according to you, only for purpose of bringing its checkbook to the settlement table. But it would have had the opportunity to at least give Axis input as to the reasonableness of any settlement. We don't know that. This was a, we only know that the letter says that you, we're going to demand that you defend and indemnify us on some future event whether some judge and jury finds coverage. And two, please come to this pre-mediation meeting. That's all we have. We don't have, and I think even Axis has conceded, that that letter, the November 7th letter, is not an opportunity or tender of defense. It is not. So they're not giving up control. No, nobody contends it is. It's an opportunity to participate in the settlement. So, okay. Okay. Any other questions? No, and thank you very much. Thank you. All right. And we're going to bring Mr. Paul back for two minutes. Thank you, Your Honor. Point number one. This is where the district court got tripped up, this stay out of it notion. What we were telling American specialty to do is not handle the coverage claim on our behalf with the bucks. We didn't want them to do it, but we never told them not to respond to our demands for indemnification. We never told them not to respond to our request to mediate. We never told them not to attend mediation, and we never told them not to take responsibility for what they themselves had called a mistake. And it's no wonder that we would want them to stay out of it. For one, my colleague reminds me that they did not respond to our request for confirmation of E&O coverage. And not only did they not respond, but we noted in our November 6th or 7th letter of 2016 that they had not responded. That's at 229-21. Moreover, American specialty had previously terminated the PMA. So, I think AXIS was left to wonder, do they have the appropriate incentive to robustly defend our interest? But in any event, AXIS had the right to assume the handling of the claim, and that should be the end of it. Secondly, again, this is where the district court got tripped up. Our final demand for indemnification does focus on whether a court or a jury ultimately finds liability. But importantly, that letter enclosed our second demand letter, which specifically demanded indemnification for any losses. It enclosed that letter, and that letter was never withdrawn. Finally, on the forfeiture point, I would just encourage the court to look at the Dr. Robert L. Meander's case. That case says you can rely on additional provisions in the contract to support your core argument, and here our core argument is there is nothing in the contract that required a tender of defense. Thank you. All right. Well, we want to thank both Mr. Paul, Mr. Ingram. You weren't in the court, I take it, when we started. So, we three want to wish you both a happy and healthy new year, and the court will be in recess until tomorrow.